Billy Allen SKEETS, Plaintiff,

v.

Roy L. JOHNSON, et al., Defendants.

No. LR–C–83–34.

United States District Court,
E.D. Arkansas, W.D.

May 23, 1985.

Cliff Jackson, Little Rock, Ark., for plaintiff.

Mike Moore and Billy S. Clark, Friday, Eldredge & Clark, Little Rock, for defendants.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

### INTRODUCTION

Plaintiff's amended complaint seeks a declaratory judgment, injunction, and reinstatement with back pay for the alleged deprivation of his rights to procedural due process by these defendants when his employment with the Arkansas State Highway and Transportation Department was terminated. His action arises under 42 U.S.C. § 1983, and this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

Pending before the Court is the resolution of the issues of whether or not the plaintiff possessed a property or liberty interest which was violated by the defendants and, if so, what process is due him under the Fourteenth Amendment to the United States Constitution. Plaintiff contends that if he receives a favorable ruling from the Court on these issues, he is entitled to the relief prayed for without inquiry by the Court into the substantive matters leading to his termination. The defendants contend that even if plaintiff prevails on these issues, plaintiff must still go forward and prove that he would not have been fired had he been afforded the procedural rights he seeks. Conversely, defendants argue that they would be entitled to prove he would have been terminated regardless of whether or not these procedural rights had been afforded.

### FACTS

The parties have entered into a comprehensive stipulation which demonstrates that there is no dispute as to the facts governing the resolution of the currently pending issues referenced above. The uncontroverted facts are as follows:

1. That plaintiff, Billy Allen Skeets, was employed by the Arkansas State Highway Department on July 1, 1969, as a captain and district supervisor and continued in that position until April 10, 1979. Plaintiff's job was not tenured, and under Arkansas law he was an at-will employee whose employment could be terminated at any time. Plaintiff's only claimed source of a property interest is the department's grievance procedures.

2. That on the aforesaid date plaintiff was informed by his direct supervisor, Roy Johnson, Chief of Weights Division, Arkansas State Highway Department, that he was terminated for "dereliction of duty."

3. That as directed by Roy Johnson, plaintiff surrendered his badge and state automobile that day and also was relieved of his duties, although he continued to be carried on the department payroll until May 18, 1979, due to accumulated vacation time. He filed his first lawsuit on May 1, 1979.

4. That the "minute order" previously filed herein established a grievance procedure for employees of the Arkansas State Highway and Transportation Department; that said "minute order" was in effect as of April 10, 1979 and was applicable to any grievance the plaintiff might have had against Roy Johnson about his discharge or the conditions surrounding it.

5. That the plaintiff never submitted any grievance in writing to the Department or in any form to any superior of Mr. Johnson's, although his testimony would be that at the time of his discharge he orally asked Mr. Johnson for a pre-termination

hearing, for a specific list of the charges against him, for an opportunity to testify and produce witnesses on his own behalf, and for an opportunity to confront and cross examine those witnesses against him. His testimony would be that this request was denied.

6. Although Roy Johnson would testify that the plaintiff never requested these pre-termination procedures, he would agree that they were not afforded Mr. Skeets prior to the notification of his termination. When Roy Johnson notified plaintiff of his discharge, he did not advise plaintiff that he was entitled to these procedures. Johnson's testimony would be that he told Skeets he had the right to demand a hearing. As a supervisor, plaintiff admits that he was familiar with the department's grievance procedure. Johnson did not advise plaintiff to submit a complaint in writing or offer to assist plaintiff in preparing a written complaint.

7. That prior to April 10, 1979, Roy Johnson had hired George Coffman and directed him to investigate the plaintiff; that George Coffman had not submitted his investigative report to Roy Johnson by April 10, 1979, although he had discussed with Roy Johnson by phone some of the allegations being made against the plaintiff; that the investigative report was not completed and given to Roy Johnson until June or July, 1979; that prior to April 10 Roy Johnson had talked directly on several occasions to Sergeant Charles Bernard and Captain Glenn Cross, employees of the Arkansas State Highway Police who worked under the plaintiff's supervision; also, that prior to April 10, 1979 Roy Johnson had received other information on Mr. Skeet's job performance including correspondence from the Arkansas State Police, and the substance of the above information was later contained in Coffman's formal report; and that the plaintiff secured a copy of Coffman's complete report through his attorney during discovery in his first lawsuit, which was later non-suited.

8. That George Coffman would testify that his report contained both direct and hearsay testimony against the plaintiff; that he never confronted the plaintiff with the allegations and asked him for his side of the story; and that his reasons for not interviewing all persons named in his report was that it would have impaired the secrecy of the investigation, plus he would have had to advise certain individuals of their *Miranda* rights.

9. That neither Roy Johnson nor any other person made a written report to the director, Henry Gray, concerning plaintiff's discharge; that Henry Gray was provided a copy of the investigative report in June or July 1979; that prior to April 10 Henry Gray was informed of the decision of Roy Johnson to terminate Mr. Skeets but did not make this decision himself or direct the manner in which Mr. Johnson terminated Mr. Skeets. Skeets was never given any written decision on his discharge.

10. That plaintiff never received a written reason for his termination; that Roy Johnson advised plaintiff that his discharge was for "dereliction of duty" and plaintiff's Personnel Data Card reflects "termination (for dereliction of duty);" that the department, however, contested plaintiff's application for unemployment benefits and advised the Arkansas Employment Security Division that plaintiff was discharged for "dereliction of duty, dishonesty, and misuse of a public vehicle;" and that plaintiff failed to attend a hearing on his employment benefits at which he could have contested his employer's stated reasons for the discharge.

11. That plaintiff was nominated for United States Marshal in 1982 by Representative John Paul Hammerschmidt; that plaintiff signed the Authority to Release information to the FBI attached to defendant's Memorandum in Support of Response to Motion for Summary Judgment; that the FBI contacted the Arkansas State Highway Department concerning plaintiff's employment record; that the defendant provided said record to the FBI, including the "report of investigation" pertaining to plaintiff's discharge; that Tom Hamburger, then a reporter for the *Arkansas Ga-*

*zette,* contacted Henry Gray concerning the allegations regarding plaintiff's termination and, after being referred to Roy Johnson, discussed the matter with Captain George Coffman, who made the statements contained in Tom Hamburger's affidavit and attached newspaper article; and that Tom Hamburger contacted Representative John Paul Hammerschmidt concerning the allegations surrounding the termination. Plaintiff's nomination was withdrawn.

## PROPERTY INTEREST

■ The determination of whether or not the plaintiff has a protectable property interest is a matter of state law, *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and "[s]uch a protectable property interest is not an automatic consequence of all public employment." *Brockell v. Norton,* 688 F.2d 588, 590 (8th Cir.1982). Although plaintiff had no written contract which expressly gave him tenure (Stipulation of Fact No. 1), this does not end our inquiry. The policies and practices of an employer can give rise to an expectancy of continued employment in some circumstances. *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ Plaintiff contends that the grievance procedures referred to in Stipulation of Fact No. 4 and set forth in the exhibits to his motion for summary judgment establish such a property interest. Specifically, plaintiff relies upon Step 1 of the grievance procedure which states that when confronted with an employee's grievance "[i]t is the duty of the supervisor to give an impartial hearing, make a thorough investigation and, if possible, make a decision which is mutually agreeable." There is no state court decision applying this grievance procedure.

Grievance procedures have been interpreted in the manner suggested by plaintiff. *Wilson v. Robinson,* 668 F.2d 380 (8th Cir.1981). In *Wilson v. Robinson* the grievance procedure expressly required two weeks notice prior to job terminations. The language of the grievance procedure

herein is not as unequivocal with regard to terminations, as in *Wilson v. Robinson,* but the Court does not view this distinction as fatal to plaintiff's contentions. A reading of the subject grievance procedure leads this Court to find that an employee, such as the plaintiff, would expect that prior to any final decision being made with respect to a change in the conditions of his employment (including termination), he would be afforded an opportunity to present his "side of the story," that a thorough investigation would occur, and that an impartial hearing would be conducted to resolve factual disputes. Plaintiff attempted to invoke the protection afforded by this grievance procedure and was denied that opportunity by defendant Johnson. Although Johnson denies that plaintiff requested any pre-termination procedures, it is difficult for the Court to believe that plaintiff, a 10-year employee, would have failed to request an opportunity to tell his "side of the story" when faced with such a drastic change in his employment conditions.

■ Defendants' arguments that plaintiff entered the grievance procedure at Step 3 and failed to properly pursue his grievance at this juncture elevates form over substance and unnecessarily strains the reading of this grievance procedure. The plaintiff made a sufficient invocation of his rights under the grievance procedure when he requested permission of defendant Johnson to tell his "side of the story."

## WAIVER

■ Defendants also argue that plaintiff waived his rights under the grievance procedure, but when defendant Johnson denied him the opportunity to rebut any charges of dereliction of duty, the plaintiff was not required to go further. Although the last paragraph of the grievance procedure provides that a grievance is deemed settled if the employee fails to take a grievance to the next step, it also provides that "[i]f the Department fails to meet and/or provide for any grievance heard within the prescribed time limits as hereinabove provided,

such grievance shall automatically advance to the next step." Defendant Johnson's refusal to provide plaintiff with the procedure set forth in Step 1 (*e.g.,* impartial hearing, thorough investigation, etc.) prevent the defendants from arguing that plaintiff abandoned his grievance. The case of *Birdwell v. Hazelwood School District,* 491 F.2d 490 (8th Cir.1974) cited by the defendants is inapposite. In *Birdwell v. Hazelwood School District, supra,* the disappointed employee failed to appear at a scheduled hearing of which he had notice. This did not occur herein, and there are no other facts present which convince the Court that the plaintiff abandoned his rights under the grievance procedure.

### RELIEF

■ The manner in which plaintiff was terminated constituted a deprivation of his property interests without affording him procedural due process. Notwithstanding this finding, defendants argue that plaintiff must demonstrate that the substantive allegations against him were untrue before he is entitled to any relief. However, this Court is persuaded by Chief Judge G. Thomas Eisele's opinion in *Shaw v. Gwatney, et al,* 604 F.Supp. 880 (E.D.Ark.1985) on this issue. In *Shaw v. Gwatney,* Judge Eisele acknowledged that his narrow reading of *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) was the minority view, but he went on to hold that the court need not decide the underlying substantive issues in procedural due process cases where a plaintiff only seeks equitable relief.

Not only was it unnecessary for the court to resolve the merits, it was inappropriate. Courts in such cases should be interpreters of the Constitution, and not arbiters of every employment decision. If the adjudication of every due process claim required a court to examine and decide the merits of the underlying claim of entitlement, court intrusion

into substantive employment and administrative decisions would greatly expand. Courts do not have the time, the expertise or the authority to take on comprehensive roles as employment decision makers. The focus in the first instance must therefore be upon the precise relief being sought.

*Shaw v. Gwatney, et al, supra,* at 887.

While back pay cannot be uniformly treated as equitable relief, *see, e.g., Setser v. Novack Investment Company,* 638 F.2d 1137 (8th Cir.1981), in a case such as this where the plaintiff seeks to be returned to the status quo ante (*e.g.,* Title VII litigation), rather than to be made whole, the court should treat a prayer for reinstatement with back pay as equitable relief.

Although the distinction between equitable and legal relief stems from an archaic and formalistic court system long since abolished, the distinction nonetheless has continued validity. With respect to due process actions, equitable relief is intended not to make a person whole but to restore the situation to what it was before the act. In other words, equitable relief is directly intended to invalidate the illegal government action and restore the status quo ante. *United States v. Cotton Plant School District No. 1,* 479 F.2d 671 (8th Cir. 1973); *Wagner v. Little Rock School District,* 373 F.Supp. 876 (E.D.Ark.1973); *see generally* Dobbs on *Remedies,* § 3.1 (1973).

*Shaw v. Gwatney, et al, supra,* at 886–87.

### CONCLUSION

The Court therefore concludes that plaintiff had a legitimate expectation that certain procedural safeguards would be adhered to prior to his termination and that when they were not carried out, his right to procedural due process was infringed. He seeks the equitable remedy of reinstatement with back pay, and the Court is therefore not required to inquire into the merits of the underlying substantive dispute concerning his job performance.[1] The Court

---

1. Because of the Court's decision with regard to the property interest issue, plaintiff's liberty interest claim will not be reached.

therefore orders that plaintiff be reinstated to his position with the Arkansas State Highway and Transportation Department and that he recover his back pay less deductions for money earned in other employment during the interim.