**Dennis SKINNER, Plaintiff–Appellee and Cross–Appellant,**

v.

**TOTAL PETROLEUM, INC., a Michigan corporation, Defendant–Appellant and Cross–Appellee.**

**Nos. 85–2807, 85–2825.**

United States Court of Appeals, Tenth Circuit.

Oct. 14, 1988.

Louis W. Bullock of Bullock & Bullock, Tulsa, Okl., for plaintiff-appellee and cross-appellant.

David E. Strecker (Katie J. Colopy with him on the brief) of Conner & Winters, Tulsa, Okl., for defendant-appellant and cross-appellee.

Before McKAY, BARRETT and LOGAN, Circuit Judges.

PER CURIAM.

This case involves the termination of the plaintiff, Dennis Skinner, a white male, from employment with the defendant, Total Petroleum, Inc., allegedly in retaliation for Mr. Skinner's assistance with an Equal Employment Opportunity Commission ("EEOC") claim brought by Mr. Skinner's black coworker, Fritz Damberville.

In February, 1980, Mr. Skinner was hired as a cashier for the Vickers Petroleum Company, which was purchased by the defendant, Total Petroleum, Inc., in January, 1981. Mr. Skinner was promoted rapidly and, within three months, he was managing the company's highest volume gasoline station in the Tulsa area. He instituted a training program for his staff and worked

many overtime hours, sometimes without pay. By January, 1981, in an intracorporate evaluation, Mr. Skinner's station was rated first in the Tulsa area. The station involved sales resulting in large amounts of cash and the risks of loss by theft or robbery. For this reason, there existed strict policies that provided that bank deposits were to be made twice a day and that keys to the company safes at the station were not to be turned over by the manager to any person not approved by the District Supervisor.

Mr. Skinner's assistant manager at the station was Fritz Damberville. Due to family constraints, Mr. Damberville was unable to work the night shift, which was the assistant manager's customary shift. Having a good working relationship, Mr. Skinner and Mr. Damberville agreed that Damberville would work the day shift and Skinner would work the night shift. No problems resulted from this arrangement, although in mid-February, 1981, Mr. Skinner's supervisor, Mr. Craig, expressed the view that Mr. Skinner should work the day shift so that he would be more "visible" to company officials.

Approximately one week later, without explanation, Mr. Craig told Mr. Skinner that he could fire Mr. Damberville if he wished. A few days thereafter, Mr. Craig again asked Mr. Skinner to fire Mr. Damberville, this time allegedly because of an incident which had occurred a few months before when Mr. Damberville left a deposit under a trash can in the station. Mr. Damberville had not been disciplined for this incident, and Mr. Skinner refused to terminate him without further cause.

In late February, 1981, Mr. Skinner went on a one-week vacation and Mr. Damberville was placed in charge. Mr. Damberville left work because of illness and left Mr. Hathcock, a manager trainee, with the keys and in charge. This had not been cleared with Mr. Craig. It was also learned that Mr. Hathcock, rather than Mr. Damberville, had prepared the morning master reports. Upon his return from va-

cation, Mr. Skinner was informed by Mr. Craig that Mr. Damberville had been fired for the incidents above-related and the earlier incident involving the deposit left under the trash can. Mr. Skinner informed Mr. Craig that he had advised Mr. Damberville to leave the keys with Mr. Hathcock.

Mr. Skinner believed that Mr. Damberville's termination was unjustified, and in the following week, he told Mr. Craig that he was prepared to provide Mr. Damberville with a written statement to support Mr. Damberville's EEOC claim against the company, unless Skinner was able to satisfactorily resolve the situation prior to taking a second one-week vacation (which was approved by his supervisor). Mr. Skinner intended to speak with Mr. Nelson, the District Manager, about the matter but did not do so because Mr. Nelson was not in his office when Mr. Skinner called.

Mr. Skinner was told by his supervisor, Mr. Craig, however, that he was being considered for a promotion, but that he was not "showing good company loyalty." Mr. Skinner departed Friday, March 13, 1981, for vacation, and upon his return he learned that he, too, had been fired. The company's stated reason for terminating Mr. Skinner was because he had failed to make a bank deposit on the shift that he had worked before leaving on vacation, in violation of company policy.

On November 23, 1982, Mr. Skinner filed a complaint against Total Petroleum, Inc., alleging violations of 42 U.S.C. § 1981 (1982) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) (1982),[1] and seeking reinstatement, backpay, lost benefits, punitive and compensatory damages, and attorney's fees. Mr. Skinner demanded a jury on his § 1981 claim. Trial commenced on February 19, 1985. Skinner's § 1981 claim was tried to a jury, while his Title VII claim was simultaneously tried to the court. On February 25, 1985, following several hours of deliberation and shortly after informing the court that it was unable to reach a unanimous decision, the jury returned a general verdict in favor of

---

1. Skinner also sought damages under 42 U.S.C. § 1985, and brought a pendent claim for inten-

tional infliction of emotional distress, both of which claims were dismissed prior to trial.

Mr. Skinner, awarding actual or nominal damages in the amount of $3,945.48 and no punitive damages. Neither party requested special interrogatories on any of the issues in this case. At oral argument, counsel for Mr. Skinner volunteered that any ambiguity in the jury's general verdict should be construed against the plaintiff who has the obligation to submit special interrogatories for jury completion. Mr. Skinner thereafter moved to set aside the verdict or for new trial, on the grounds that the damage award was unreasonably low and the product of jury compromise. The court denied this motion in a minute order dated November 1, 1985.

On July 22, 1985, the court entered judgment for Mr. Skinner on his Title VII claim, awarding him damages for backpay and lost benefits in the amount of $40,251.43. The court later awarded Mr. Skinner attorney's fees in the amount of $51,818.75 and costs in the amount of $1,997.32. Total Petroleum moved to alter or amend the court's Title VII judgment; this motion was also denied in the November 1 minute order.

Both Mr. Skinner and Total Petroleum now appeal to this court on various grounds. Mr. Skinner contends that the district court erroneously denied his motion to set aside the verdict or for new trial, because the jury's verdict on the § 1981 claim was grossly inadequate, unsupported by the evidence, and the result of jury compromise. Total Petroleum, on the other hand, argues that the jury's damage award was supported by the evidence and appeals the district court's judgment in favor of Mr. Skinner on the Title VII claim, on the grounds that Mr. Skinner failed to meet his burden of proof and that the district court was bound by the jury's determination of damages. It also contests the district court's denial of its motion to dismiss plaintiff's Title VII claim, contending that the claim was not timely filed, and plaintiff's § 1981 claim, contending that an action for retaliatory termination is not encompassed by that section.[2] For the reasons outlined below, we affirm in part and reverse in part and remand this case to the district court.[3]

## I. *Disparate Damage Awards Under § 1981 and Title VII*

We first address the issue raised by the parties' appeals of the two disparate damage awards in this case. Mr. Skinner contends that the district court should have set aside the jury's verdict because the damages awarded were unconscionably low and the result of jury compromise. Total Petroleum, on the other hand, argues that the jury's award was reasonable and supported by the evidence and, moreover, that the district court was bound by this amount and could not separately award Mr. Skinner damages under Title VII. Because we conclude that the district court's disposition of this case was constitutionally infirm, we reverse the district court's denial of plaintiff's motion for new trial following the jury verdict on the § 1981 claim, its judgment under Title VII, and its award of attorney's fees to the plaintiff.

The starting point for our analysis of this issue is the Seventh Amendment. This amendment provides, "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const.Amend. VII. The Seventh Amendment protects a party's right to a jury trial by ensuring that factual determinations made by a jury are not thereafter set aside

---

**2.** In addition, Total Petroleum also argues that the jury verdict on Skinner's § 1981 claim and the district court's judgment on the Title VII claim were unsupported by the evidence, and it appeals the district court's allowance of certain attorney's fees to Mr. Skinner. Because of our disposition of this case today, we do not reach these issues.

**3.** At the request of the court, the parties have additionally addressed whether the defendant's

motion to dismiss and the parties' notices of appeal were timely filed. Since defendant's motion to dismiss was pending at the time the 1983 amendment to Rule 6 came into effect, we conclude that its motion was timely filed. *See John R. Alley & Co. v. Federal Nat'l Bank of Shawnee, Shawnee County, Okla.,* 124 F.2d 995 (10th Cir. 1942). Likewise, both parties' notices of appeal were timely filed. Fed.R.App.P. 4, 26.

by the court, except as permitted under the common law. "The only modes known to the common law to re-examine such facts, are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable; or the award of a *venire fascias de novo* [new trial], by an appellate court, for some error of law which intervened in the proceedings." *Parsons v. Bedford, Breedlove & Robeson,* 28 U.S. (3 Pet.) 433, 446, 7 L.Ed. 732 (1830); *see also, Thorn v. Browne,* 257 F. 519, 527 (8th Cir.), *cert. denied,* 250 U.S. 645, 39 S.Ct. 494, 63 L.Ed. 1187 (1919). Thus, under the Seventh Amendment, the court may not substitute its judgment of the facts for that of the jury; it may only grant a new trial if it concludes that the jury's verdict was so against the weight of the evidence as to be unsupportable.

The strictures of the Seventh Amendment are particularly applicable in a case where, due to the presence of both equitable and legal issues, trial is both to the jury and to the court. In such a situation, when a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must be first tried to the jury, so that the litigants' Seventh Amendment jury trial rights are not foreclosed on common factual issues. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472–73, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) ("only under the most imperative circumstances ... can the right of a jury trial of legal issues be lost through the prior determination of equitable claims"); *Butler v. Pollard,* 800 F.2d 223, 225 (10th Cir.1986). Moreover, the court is bound by the jury's determination of factual issues common to both the legal and equitable claims. *Hunter v. Allis–Chalmers Corp., Engine Div.,* 797 F.2d 1417, 1421 (7th Cir.1986); *Lincoln v. Board of Regents of the Univ. System of Ga.,* 697 F.2d 928, 934 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed. 2d 102 (1983).

In civil rights actions, trial to a jury and to the court is common when a plaintiff has alleged violations of § 1981 and Title VII. Bifurcation is necessary because of the different remedies available under each statute. Under Title VII, a complainant may request backpay commencing not more than two years prior to the filing of his claim with the EEOC, reinstatement, and other affirmative relief as may be appropriate. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 458, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975). Because these remedies are equitable in nature, a Title VII claimant is not entitled to a jury trial. *See Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981); *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979). A claimant who establishes a cause of action under § 1981, however, can recover both compensatory and punitive damages, as well as backpay and lost benefits for an unlimited period of time. *Johnson,* 421 U.S. at 460, 95 S.Ct. at 1720. Since these remedies have been characterized as legal in nature, a claimant is entitled to a jury trial on his § 1981 claim. *See generally, Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (right to jury trial extends to actions for monetary damages to enforce statutorily created legal rights.) Thus, a claimant who can frame a cause of action under both Title VII and § 1981 may benefit from the expanded remedies available by alleging a violation under both provisions, but must try the claims separately to the jury and to the court, with the jury's findings binding on all common issues.

Allocation of the factfinding function between the jury and the court is complicated in this case because backpay is available under both Title VII and § 1981. Courts have been far from consistent in their treatment of whether backpay is to be treated as a legal or an equitable remedy, to be determined by the court or by the jury. *Compare Setser v. Novak Inv. Co.,* 638 F.2d 1137 (8th Cir.), *rev'd in part on other grounds,* 657 F.2d 962, *cert. denied,* 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981) and *Moore v. Sun Oil Co.,* 636 F.2d

154 (6th Cir.1980). The Supreme Court has yet to directly rule on this issue. In general, the characterization of backpay as legal or equitable has been determined by whether the plaintiff has requested backpay as an adjunct to the equitable remedy of reinstatement, in which case it has been characterized as equitable, *see, e.g., Harmon v. May Broadcasting Co.*, 583 F.2d 410, 411 (8th Cir.1978), or as an element of the plaintiff's damages for the breach of his employment contract, *see, e.g., Thomas v. Resort Health Related Facility*, 539 F.Supp. 630, 636 (E.D.N.Y.1982). In addition, where a plaintiff makes unsubstantiated claims for punitive and compensatory damages under § 1981 simply to gain a jury trial on the issue of backpay, his jury demand has been denied. *See Hildebrand v. Board of Trustees of Michigan State Univ.*, 607 F.2d 1282 (6th Cir.1979); *Davidson v. Yeshiva Univ.*, 555 F.Supp. 75, 80 (S.D.N.Y.1982).

In this case, Mr. Skinner framed his action under both § 1981 and Title VII, prayed for relief in the nature of compensatory and punitive damages, backpay, lost benefits and reinstatement, and requested a jury trial. The trial was bifurcated, with the jury to decide Mr. Skinner's § 1981 claim and the court to decide his Title VII claim. At the conclusion of the trial, however, the jury was instructed not only as to the issues of liability and compensatory and punitive damages under § 1981, but also as to the issues of backpay, lost benefits, and the plaintiff's obligation to mitigate his damages. Obviously, by instructing the jury on backpay and lost benefits, the district court treated these issues as legal in nature. Likewise, we note that the focus of Mr. Skinner's complaint, despite his request for reinstatement,[4] was on the recovery of legal damages as a result of his allegedly discriminatory discharge from Total Petroleum, rather than a return to the status quo ante. *See, e.g., Powell v. Pennsylvania Housing Finance Agency*, 563 F.Supp. 419, 422 (M.D.Pa.1983); *Skeets v. Johnson*, 609 F.Supp. 793, 797 (E.D.Ark.

1985), *aff'd*, 805 F.2d 767 (8th Cir.1986). Moreover, his claims for punitive and compensatory damages did not appear frivolous. *See Bibbs v. Jim Lynch Cadillac, Inc.*, 653 F.2d 316 (8th Cir.1981). Thus, we must consider the issue of backpay in this case as inherently in the nature of legal damages, and conclude that the straightforward "calculations necessary to determine the hours of lost work stemming from a § 1981 violations are ... within the practical capabilities of [the jury]." *Setser*, 638 F.2d at 1142.

■ Given that the issue of backpay was properly before the jury in the first instance, the more central concern in this case is that the court did not accept the jury's determinations under § 1981 as binding on the parallel Title VII action. In a case under Title VII and § 1981 arising out of the same facts, the commonality of factual issues between the § 1981 and Title VII claims is nearly all-encompassing. The elements of each cause of action have been construed as identical, *O'Loughlin v. Procon, Inc.*, 627 F.Supp. 675, 677 (E.D.Tex.), *aff'd*, 808 F.2d 54 (5th Cir.1986); *Lewis v. University of Pittsburgh*, 725 F.2d 910, 915 (3d Cir.1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984), and a jury verdict on the issue of liability on a disparate treatment claim under § 1981 is normally conclusive on the issue of liability in a parallel action under Title VII. *See, e.g., King v. Alco Controls Div. of Emerson Elec. Co.*, 746 F.2d 1331, 1332 n. 2 (8th Cir.1984); *Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1129, 1139 (10th Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983). Consequently, the only issue left for decision by the district court after a jury finding of liability and damages awards under § 1981 would be the issue of the plaintiff's entitlement to reinstatement and attorneys' fees under Title VII. *Muldrew v. Anheuser-Busch, Inc.*, 554 F.Supp. 808, 810–11 (E.D.Mo. 1982), *aff'd*, 728 F.2d 989 (8th Cir.1984); *see also, Banerjee v. Board of Trustees of*

---

**4.** It appears that the district court did not consider this element of relief, in that its findings of fact and conclusions of law make no mention of the subject, nor does Mr. Skinner contend that this relief was improperly denied.

*Smith College,* 495 F.Supp. 1148, 1156 (D.Mass.1980), *aff'd* 648 F.2d 61 (1st Cir.), *cert. denied* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) (treating § 1981 and Title VII as coextensive, the primary difference only in the scope of relief available under each statute).

The parties agree that the jury verdict for $3,945.48 represented the amount of backpay which the jury determined Mr. Skinner was entitled under § 1981.[5] Mr. Skinner then moved to have the jury verdict set aside, on the grounds that the amount of the backpay award was unreasonably low and the result of jury compromise. The court denied this motion, yet thereafter awarded Mr. Skinner over $40,000.00 as compensation for backpay and lost benefits under Title VII. Such action by the court was in violation of the Seventh Amendment: either the court should have granted the motion for new trial if it concluded that the damage award was, in fact, too low, or it should have treated the jury's award of backpay under § 1981 as determinative of both claims. Moreover, the district court's award of backpay under Title VII was improper in that it amounted to a double recovery for the plaintiff for the same injury. *Muldrew,* 554 F.Supp. at 810,

811; *see also, Clappier v. Flynn,* 605 F.2d 519, 531 (10th Cir.1979) (in action joining § 1983 and common law negligence claims arising from identical facts and claiming identical relief, district court erred in allowing recovery under more than one theory of liability). As discussed below, we conclude that the district court abused its discretion in failing to grant the plaintiff's motion for new trial in this case.[6] *See Black v. Hieb's Enter., Inc.,* 805 F.2d 360, 362 (10th Cir.1986).

## II. *New Trial*

■ After the court's entry of judgment on the jury's verdict under § 1981, Mr. Skinner moved to set aside the verdict or for new trial, on the grounds that the damage award was grossly inadequate and the product of jury compromise. While normally a matter for the court's discretion, *see Community National Life Insurance Co. v. Parker Square Savings & Loan Association,* 406 F.2d 603, 605 (10th Cir. 1969), on the facts before us, the failure of the district court to grant a new trial was an abuse of that discretion.

To determine whether a verdict is the result of jury compromise, we look to several factors. In particular, a damages

---

5. The jury's actual verdict read, "We the jury, ... assess damages as follows. Actual or nominal damages in the amount of three thousand, nine hundred and forty-five dollars and forty-eight cents. We the jury assess punitive damages against the defendant in the amount of zero." Encompassed in the actual damage award are the issues of compensatory damages, backpay, and the plaintiff's duty to mitigate damages. Since the parties submitted no special interrogatories in this case, we have no way of discerning, how, if at all, the award of actual damages was distributed between backpay and compensatory damages, and whether the jury found that the defendant had failed to fully mitigate his damages. However, both parties have conceded at oral argument that the jury's award in this case was solely one of backpay, and we accept their characterization for the purposes of this appeal. We note, however, that the use of special interrogatories concerning specific facts establishing liability or lack thereof, and relating those facts to the specific damages claimed would have provided the jury's responses to vital issues. A request for a special verdict under Fed.R.Civ.P. 49(a) should have been requested by the plaintiff or otherwise submitted.

6. Mr. Skinner cites our decision in *Poolaw v. City of Anadarko, Oklahoma,* 738 F.2d 364 (10th Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985), as supporting the district court's separate determination of backpay in this case. In *Poolaw,* the jury found liability and awarded damages on race discrimination claim brought under § 1981; yet, on the same evidence, the district court found no liability and awarded no damages under Title VII. We affirmed, reasoning that § 1981 and Title VII are not mutually exclusive, and that the opposite conclusions reached by the separate factfinders in that case were therefore permissible. As our opinion today makes clear, the jury's findings on factual issues common to claims under § 1981 and Title VII are binding on the district court, and, to the extent that any inferences or statements in *Poolaw* may lend a contrary impression, they are overruled. In accord with our practice in similar cases, this panel decision has been circulated among all active judges on the court, and, with the exception of Judge Seymour, who recused, all of the active judges on the court agreed to the conclusion stated in this footnote.

award that is grossly inadequate, a close question of liability, and an odd chronology of jury deliberations are all indicia of a compromise verdict. *National Railroad Passenger Corp. v. Koch Indus., Inc.*, 701 F.2d 108, 110 (10th Cir.1983). All three appear to be present in this case. First, we note that the damages awarded by the jury, $3,945.48, represent a small fraction of those actually claimed by Mr. Skinner, $40,354.24. Total Petroleum asserts that this award was not arbitrary, in that it exactly equates to fourteen weeks of backpay.

While this neatly explains the dollar amount of the award, we cannot engage in such speculation. To support such an award, we must assume that the jury found that Mr. Skinner had failed to mitigate his damages during this period. Yet there is no evidence in the record by which the defendant demonstrated the plaintiff's failure to mitigate his damages to the extent implicit in the jury's award. *See United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 937 (10th Cir.1979) (defendant has the burden to prove that the plaintiff did not exercise reasonable diligence in mitigating his damages). In addition, there was no evidence before the jury to explain its choice to use a fourteen-week period to calculate the plaintiff's damages. Further, the jury failed to include lost benefits corresponding to the amount of backpay actually awarded.

While the computation of damages may not alone support Mr. Skinner's argument that the jury's verdict was the product of compromise, the pattern of jury deliberations in this case is suspect. After deliberating approximately three hours on Friday, February 22, the jury indicated that it could not reach a verdict and requested to be discharged for the weekend. It resumed deliberations the following Monday morning, February 25, and shortly thereafter, it requested to see portions of Messrs. Skinner and Damberville's testimony relating solely to the issue of liability. Late Monday morning, the jury informed the court that it was unable to reach a unanimous decision. The jury was then instructed to take its lunch break and then

to resume deliberations. Within two hours after returning from lunch, it returned its verdict.

The jury's sudden arrival at unanimity, when just a few hours before it was still struggling with an apparently close issue of liability, raises the question of the reliability of the jury's verdict. · This, coupled with the fact that the district court, by awarding substantially greater damages in its Title VII judgment, thus implicitly concluding that the jury's backpay award was inadequate, supports our conclusion that the district court's denial of Mr. Skinner's motion for new trial was an abuse of discretion. We therefore reverse the portion of the district court's order denying Mr. Skinner's motion for new trial.

### III. *Defendant's Motions to Dismiss the Title VII and § 1981 Claims*

■ Having addressed the parties' appeals regarding the damage awards in this case, we turn now to the defendant's remaining appeals. Total Petroleum contests the district court's denial of its motion to dismiss Mr. Skinner's Title VII claim, on the grounds the claim was not filed within state law limitations. At oral argument, however, it conceded that this contention has been foreclosed by the recent Supreme Court decision in *Equal Employment Opportunity Commission v. Commercial Office Products Co.*, —— U.S. ——, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). This decision affirms the rule first enunciated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980), that a complainant need only file his charge within 240 days of the alleged discriminatory practice to preserve his federal rights under Title VII. *See also Smith v. Oral Roberts Evangelistic Ass'n, Inc.*, 731 F.2d 684 (10th Cir.1984).

Total Petroleum also argues that its motion to dismiss Mr. Skinner's § 1981 claim was improperly denied. It contends that § 1981 does not address a case in which an employee, who has assisted a coworker with bringing an EEOC claim and is thereafter fired from his job, brings a retaliatory termination action against his former

employer. Total Petroleum argues that such an action is not based on the claimant's race, as required by § 1981, but that it is based the employee's aid in the EEOC proceedings.

A number of courts have recognized that an employee who has been the subject of employer retaliation because of his efforts to vindicate the rights of racial minorities may bring an action under § 1981. In *Winston v. Lear–Siegler, Inc.,* 558 F.2d 1266 (6th Cir.1977), the court relied heavily on *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), wherein a white lessor, suing under both §§ 1981 and 1982, was given standing to sue a community park corporation because of his expulsion from the corporation for assigning his share in the corporation to his black lessor. Hence, the plaintiff in *Sullivan* was not discriminated against because of *his* race, but because of the race of his lessor. The court recognized that the precise holding of *Sullivan* was limited to § 1982, but that "in view of both Sections 1981 and 1982 being derived from the Civil Rights Act of 1866 and in view of the similarity in language and intent, no reason is seen not to apply the rationale of *Sullivan* in interpreting Section 1981." 558 F.2d at 1270. We conclude, as did the court in *Winston v. Lear–Siegler, Inc.,* that "although [plaintiff] was not fired because of his race, it was a racial situation in which he became involved that resulted in his discharge from his employment," 558 F.2d at 1268, and that his claim is therefore cognizable under § 1981.[7] We affirm the district court's denial of the defendant's motion to dismiss the § 1981 claim.

We AFFIRM in part and REVERSE in part. The judgments of the district court awarding damages under the § 1981 jury verdict and the Title VII claim are set aside, together with the judgment awarding plaintiff's attorney's fees and costs.

The case is REMANDED to the district court for a new trial consistent with this opinion.

The mandate shall issue forthwith.

---

7. Both before and after *Winston v. Lear–Siegler, Inc.,* a number of courts have followed suit. See *Pinkard v. Pullman–Standard, a Div. of Pullman, Inc.,* 678 F.2d 1211 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306 (2d Cir.1975); *Price v. Federal Express Corp.,* 660 F.Supp. 1388 (D.Colo.1987); *Perry v. Manocherian,* 675 F.Supp. 1417 (S.D.N.Y.1987); *Ragheb v. Blue Cross & Blue Shield of Mich.,* 467 F.Supp. 94 (E.D.Mich.1979); *Liotta v. National Forge Co.,* 473 F.Supp. 1139 (W.D.Pa. 1979), *aff'd in part,* 629 F.2d 903 (3d Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981).