LUCERO, J., Circuit Judge,
dissenting.
Under the majority’s result, the class plaintiffs are entitled to neither reinstatement nor back pay. Not only does the majority’s holding fail to deter ERISA violations, it also encourages employers who violate ERISA to delay proceedings as long as possible, “lead[ing] to the strange result that .... the most egregious offenders could be subject to the least sanctions.” Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 853, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). Because I disagree that Congress intended this result or that precedent demands it, I respectfully dissent.
On December 3, 1993, McDonnell Douglas Corporation announced it was closing its Tulsa, Oklahoma facility. In July 1994, almost ten years ago, Plaintiff James R. Millsap commenced this class action. The class plaintiffs alleged and the district court found that McDonnell Douglas violated § 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (“ERISA”), which proscribes an employer’s interference with a participant’s rights under a qualified benefit plan. Millsap v. McDonnell Douglas Corp., 162 F.Supp.2d 1262, 1264, 1310 (N.D.Okla.2001) (Millsap I). Class plaintiffs sought all appropriate equitable relief under § 502(a)(3), including lost benefits, back pay, and reinstatement or front pay in lieu of reinstatement; McDonnell Douglas sought to preclude an award of back pay under ERISA § 502(a)(3).
Finding that the passage of eight years spent in litigation rendered reinstatement impossible and front pay inappropriate, the district court denied reinstatement and front pay to the class plaintiffs. Millsap v. McDonnell Douglas Corp., No. 94-CV-633-H, 2002 WL 31386076, at *6 (N.D.Okla. Sept.25, 2002) CMillsap II). However, the district court denied McDonnell Douglas’ motion to preclude back pay, determining that the plaintiffs’ claim for back pay was equitable in nature. Id. at *5. On interlocutory appeal, we are limited to the following certified question:
[Wjhether, in this ERISA § 510 case and as a result of Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), back pay (and, as a result, any other damages based upon back pay) are available as “appropriate equitable relief’ to the class members pursuant to ERISA § 502(a)(3).
(Maj. Op. at 1248.)
ERISA § 502(a)(3), under which class plaintiffs seek relief, provides:
A civil action may be brought — (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132(a)(3) (emphasis added). Two seminal Supreme Court cases have interpreted the bounds of “appropriate equitable relief.”
One of the Court’s first interpretations of § 502(a)(3) appeared in Mertens v. Hewitt Assoc., 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). As the majority explains, Mertens involved an action brought under § 502(a)(3) by former employees who alleged that their retirement plan’s actuary breached its fiduciary duty; the Court denied monetary damages to the petitioners on the ground that the remedy sought was “nothing other than compensatory damages,” a remedy typically available at law and not equity. Id. at 255, 113 S.Ct. 2063. Outlining the test for “appro *1262 priate equitable relief,” the Court explained that § 502(a)(3) permits the award of remedies only for “those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).” Id. at 256, 257-58,113 S.Ct. 2063.
Applying its language from Mertens in a § 502(a)(3) case alleging breach of contract, the Court further defined the bounds of equitable relief in Great-West, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635. There, the Court again denied relief, characterizing the reimbursement relief sought as an effort “to impose personal liability on [defendant] for a contractual obligation to pay money — relief that was not typically available in equity.” 534 U.S. at 210, 122 S.Ct. 708.
The majority relies on these authorities to support its conclusion that back pay is not available as appropriate equitable relief. However, the majority reads too much into the Supreme Court’s holdings; neither Mertens nor Great-West expressly preclude back pay as an equitable remedy under ERISA.[1] Instead, the Court left unresolved the precise issue before us today — -whether back pay constitutes appropriate equitable relief under § 502(a)(3). Consistent with Mertens and Great-West, our inquiry turns on whether the relief sought — here, back pay — was typically available in equity. In order to refine this inquiry, Greatr-West directs courts to “consult[ ] ... standard current works such as Dobbs, Palmer, Corbin, and the Restatements, ... [to] make the answer clear.” Great-West, 534 U.S. at 217, 122 S.Ct. 708.
Consulting these sources, I find that none explicitly conclude that back pay is not equitable in nature. To the contrary, the only source cited by the majority that speaks directly to back pay, Dobbs, is less than clear. Although Dobbs first states that back pay “seems on the surface to be an ordinary damages claim, almost an exemplar of a claim at law,” it ends with the recognition that “in fact the cases do not yield upon any such single conclusion.” 2 Dan B. Dobbs, Law of Remedies, § 6.10(1) at 226 (2d ed.1993). With respect to wrongful discharge and job discrimination claims, Dobbs acknowledges that “back pay and reinstatement remedies are usually considered equitable.” Id. at 193 (emphasis added). In sum, the guidance provided by Dobbs is scant but suggests the conclusion that with respect to the class plaintiffs who were wrongfully discharged, the back pay remedy is equitable.'
The majority’s conclusion that back pay is legal in nature is rooted in its analogy to common law compensation. Although the majority recognizes that “reinstatement of the employee and payment for time lost are remedies not known to the common law but created by statute,” NLRB v. W. Ky. Coal Co., 116 F.2d 816, 821 (6th Cir.1940) (Arant, J., dissenting in part), it *1263 nonetheless concludes that back pay, which involves monetary relief, is necessarily the same as compensation. Because compensation claims sounded in law under the common law, the majority argues, it follows that the type of relief sought here is also legal in nature.
This proposition turns its back on our own en banc precedent. We have previously recognized that “[a]n award of back pay ... is an integral part of the equitable remedy of reinstatement and is not comparable to damages in a common law action.” Bertot v. School District No. 1, Albany County, 613 F.2d 245, 250 (10th Cir.1979) (en banc) (quotation omitted). A comparison to common law by analogy is particularly inappropriate because employee reinstatement and back pay remedies, which were created in the latter half of the twentieth century, displaced “the traditional rule ... that an ‘at will’ employee could be discharged at any time and for any reason.” 2 Dobbs § 6.10(1), at 190.
Contrary to the majority’s conclusion, it is not sufficient to state that because back pay involves monetary relief, it is necessarily legal in nature. Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). “[N]ot all monetary relief is damages,” and “[ejquity sometimes awards monetary relief, or the equivalent.” Clair v. Harris Trust & Sav. Bank, 190 F.3d 495, 498 (7th Cir.1999) (concluding that “restitution is both a legal and an equitable remedy that is monetary yet is distinct from damages”); Allison v. Bank One-Denver, 289 F.3d 1223, 1243 (10th Cir.2002) (holding in an ERISA case decided after Great-West that monetary relief in the form of prejudgment interest may be equitable in nature). Even Great-West, which stated that suits seeking monetary relief are “almost invariably ... [legal] suits for money damages,” 534 U.S. at 210, 122 S.Ct. 708 (quotation omitted), does not compel the result that all suits seeking monetary relief are legal in nature. Despite the majority’s conclusion to the contrary, the case law with respect to this latter point — money damages — prescribes no clear answer. Thus we look to the language of § 502(a)(3) for instruction. Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 254, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (“In ERISA cases, as in any case of statutory construction, our analysis begins with the language of the statute.”).
In looking at the plain language of the statute, the majority states that “Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly,” (Maj. Op. at 1250) (quotation omitted), and therefore that back pay, because it is not explicitly mentioned in § 502(a)(3), is not a recognized form of relief. However, the plain language of the statute is not unambiguous as the majority would have it. To the contrary, the essence of this dispute is over the proper interpretation of the word “equitable” as used in the statute. Although § 502(a)(3) does not authorize any specific equitable remedy, reinstatement indisputably constitutes “appropriate equitable relief’ to remedy violations of § 510. Great West, 534 U.S. at 211 n. 4, 122 S.Ct. 708; Mertens, 508 U.S. at 256, 113 S.Ct. 2063; Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 384 (4th Cir.2001). Contrary to the majority’s conclusion, the plain language of § 502(a)(3) similarly does not clearly preclude back pay as appropriate equitable relief.
Because there is ambiguity as to what constitutes equitable relief, I would look to the legislative history and purpose of ERISA, for the art of statutory interpretation is to promote Congressional intent while avoiding counterproductive results. See e.g., Pollard, 532 U.S. at 852-54, 121 S.Ct. 1946. Congress’s intentions are *1264 clear in ERISA’s statement of policy; it sought to protect “the interests of participants in employee benefit plans and their beneficiaries ... by providing for appropriate remedies, sanctions, and ready access to the Federal courts.” ERISA § 2(b), 29 U.S.C. § 1001(b). This purpose is equally apparent in the legislative history of ERISA, wherein Congress expressed its intent to “strengthen and improve the protections and interests of participants and beneficiaries of employee pension and welfare benefit plans,” S.Rep. No. 93-127, at 1 (1973), U.S.Code Cong. & Admin.News at 4838, and stated that the “primary purpose of the bill is the protection of individual pension rights,” H.R.Rep. No. 93-533, at 1 (1973), U.S.Code Cong. & Admin.News at 4639.
Courts have consistently recognized the broad protections ERISA affords employees. “ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.” Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quotations omitted). “By its terms § 510 protects plan participants from termination motivated by an employer’s desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits.” Id. at 143, 111 S.Ct. 478. “Section 510 proscribes changes in employment status based upon benefit motivations,” Garratt v. Walker, 164 F.3d 1249, 1255 (10th Cir.1998) (en banc), and “helps to make [employer’s] promises [of benefits] credible.” Inter-Modal Rail Employees Ass’n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 516, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997) (quotation omitted). Here, McDonnell Douglas terminated its employees to avoid paying benefits. This is precisely the factual scenario Congress intended to prevent when it enacted ERISA. Nonetheless, the majority carves out a method by which employers can violate ERISA in letter and spirit, yet escape the consequences.
Consistent with the purposes of ERISA and contrary to the majority’s result, our previous cases that have considered the nature of back pay in other employment contexts have held that back pay is, in fact, equitable. Cf. Bertot, 613 F.2d at 250 (concluding that in a § 1982 public employee case, “an award of back pay is an element of equitable relief’); DeVargas v. Mason & Hanger-Silas Mason Co. Inc., 911 F.2d 1377, 1381 n. 3 (10th Cir.1990) (citation omitted) (“the bar on recovery of ‘money damages’ contained in 5 U.S.C. § 702 does not include equitable backpay, which is a form of equitable relief, not monetary damages”).[2] Similarly, it is un *1265 disputed that an injunction ordering an employee’s return to work — reinstatement — is equitable relief under ERISA § 502(a)(3), Mertens, 508 U.S. at 256, 113 S.Ct. 2063; Griggs, 237 F.3d at 384, and that as a general rule, back pay is considered an equitable remedy when it is intertwined with injunctive relief or made an integral part of an overall equitable remedy. Terry, 494 U.S. at 571, 110 S.Ct. 1339 (“a monetary award incidental to or intertwined with injunctive relief may be equitable” in nature) (quotation omitted); Tull v. United States, 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); Curtis v. Loether, 415 U.S. 189, 197, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); see also Adams v. Cyprus Amax Minerals Co., 149 F.3d 1156, 1161 (10th Cir.1998). In the context of § 510 violations, ERISA § 502(a)(3) authorizes what has been termed in other statutory contexts as the “conventional remedy” of reinstatement with back pay. Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 902, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). This equitable remedy is consistent with labor-protective legislation dating back to the New Deal, NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48-49, 57 S.Ct. 615, 81 L.Ed. 893 (1937), and is consistent with ERISA’s primary purposes.
Despite clear precedent that back pay is equitable in nature when integrated with reinstatement, the majority concludes that back pay is not equitable under the present circumstances because back pay and restoration of benefits are the only remedies available in this case. (Maj. Op. at 1249 n. 3.) However, “[t]he characterization of back pay as legal or equitable has been determined by whether the plaintiff has requested back pay as an adjunct to the equitable remedy of reinstatement, in which case it has been characterized as equitable.” Skinner v. Total Petroleum Inc., 859 F.2d 1439, 1444 (10th Cir.1988). The present class plaintiffs sought both reinstatement and back pay.[3]
“[Ajccording to the prevailing view, where the aggrieved party shows entitlement to equitable relief, but a grant appears to be impossible or impracticable, the court may nevertheless proceed with the case, determine disputed issues, and adjust the rights and obligations of the parties, awarding damages or a money judgment” in lieu of the requested equitable remedy. 27A Am. Jur.2d Equity § 106 (2003); Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1334 (10th Cir.1982); Schwartz, 45 F.3d at 1023 (“Front pay is *1266 awarded ... when the preferred remedy of reinstatement, indisputably an equitable remedy, is not appropriate or feasible.”). In a similar inquiry involving front pay, the Supreme Court has explained that to deny front pay in the case where reinstatement was unavailable and award it in the case where the plaintiff was eventually reinstated “would lead to the strange result .... that the most egregious offenders could be subject to the least sanctions.” Pollard, 532 U.S. at 853, 121 S.Ct. 1946.
The majority’s result is similarly disconcerting. Here, reinstatement would have been an appropriate equitable remedy had McDonnell Douglas not so delayed proceedings as to make reinstatement impossible. Thus, through no fault of their own, the class plaintiffs find themselves devoid of the undeniably appropriate equitable remedy of reinstatement. Back pay, which was integral to the relief sought by the plaintiffs at the onset of this litigation, provides an appropriate equitable alternative.
I would conclude that the district court was within its power to provide for back pay as “other appropriate equitable relief’ where, as here, the equitable remedy of reinstatement is no longer feasible. Because I conclude that back pay is appropriate equitable relief as contemplated by ERISA § 502(a)(3) under the present circumstances, I respectfully DISSENT.

. Although Great-West did not explicitly involve the question of back pay, the Court did consider back pay awards under Title VII in footnote four. 534 U.S. at 218 n. 4, 122 S.Ct. 708. There, the Court discussed back pay awards in response to a point raised by Justice Ginsburg’s dissent, in which Justice Ginsburg argued that because Congress treated back pay as an equitable remedy under Title VII, the restitutionary relief in Great West should also be considered equitable. Id. at 229-230, 122 S.Ct. 708. Disagreeing, the majority contended that Congress never regarded back pay as an inherently equitable remedy, explaining that Congress considered back pay "equitable in Title VII only in the narrow sense that it allowed back pay to be awarded together with equitable relief.” Id. (citation omitted). Thus, the Court simply concluded that under Title VII, which explicitly intertwines back pay with reinstatement, back pay is equitable. Id. Moreover, the Court recognized that "Title VII has nothing to do with this case," id., and refrained from inquiring whether the remedy of back pay is typically available in courts of equity.

. Other courts considering the nature of back pay in employment discrimination contexts have also classified back pay as equitable. See, e.g., West v. Gibson, 527 U.S. 212, 217, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999) (Title VII); Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (Title IX); Consol. Rail Corp. v. Darrone, 465 U.S. 624, 630, 631 n. 10, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984) (Rehabilitation Act); Ford Motor Co. v. EEOC, 458 U.S. 219, 226 n. 8, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982) (Title VII); Albemarle Paper Co. v. Moody, 422 U.S. 405, 419 n. 11, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (Title VII); Sandberg v. KPMG Peat Marwick, LLP, 111 F.3d 331, 336 (2d Cir.1997) (remedies available for violations of Section 510 include “back pay, restitution and reinstatement”); Zimmerman v. Sloss Equip., Inc., 835 F.Supp. 1283, 1293 (D.Kan.1993) (finding back pay an equitable remedy for § 510 purposes); Pegg v. Gen. Motors Corp., 793 F.Supp. 284, 287 (D.Kan.1992); but see Oliver-Pullins v. Associated Material Handling Indus., Inc. No. 1:03-cv-0099-JDT-WTL, 2003 WL 21696207, at *3 (S.D.Ind. May 20, 2003) (section 510 claim for back pay is legal and not equitable under Great-West).

. Applying Skinner, the majority also states that back pay is legal under the present facts because the plaintiffs sought primarily legal relief at the onset of this litigation. (Maj. Op. at 1248 n. 1, 1256 n. 12.) However, in their Complaint and First Amended Complaint, the class plaintiffs requested "damages in an amount determined to have been sustained by ... each member of the Plaintiff class [and] ... restitution to the plans for losses resulting from the breach and any other equitable or remedial relief deemed appropriate by the Court, together with interest and costs of suit.” (MDC App. 84-85, 90-94.) (emphasis added.) The case was bifurcated for trial, the liability phase was tried to the bench, and the district court held that McDonnell Douglas had violated ERISA § 510. Millsap II, 162 F.Supp.2d at 1310.
Following the September 5, 2001 liability order, on September 26, 2001, the parties filed a Joint Status Report which discussed, inter alia, what kinds of relief would be available to the class. There, the class plaintiffs reiterated their intention to seek restoration of benefits and appropriate equitable relief, specifically requesting reinstatement, front pay and back pay. Based on the language in the Complaint and Amended Complaint, I cannot conclude that the class plaintiffs sought primarily legal damages at the onset of this litigation. To the contrary, the class plaintiffs sought both legal and equitable relief in their Complaint, and sought back pay as an adjunct to the equitable remedy of reinstatement in the Joint Status Report.