Hugh O'LOUGHLIN, Sr.

v.

PROCON, INCORPORATED.

Civ. A. No. B-83-762-CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 31, 1986.

Kent W. Johns and Gaylyn Cooper, Beaumont, Tex., for plaintiff.

Ross Harrison, Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

The Plaintiff, Hugh O'Loughlin, brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et. seq.* (Law.Co-Op.1978 & Supp.1985), and 42 U.S.C.S. § 1981 (Law.Co-Op.1978), alleging a discriminatory discharge of employment based upon race (black) and national origin (Cuban). Plaintiff is also alleging a common law cause of action for wrongful discharge. Plaintiff is seeking reinstatement, compensation and injunctive relief.

Plaintiff, a black male citizen of Cuba, entered into a Contract of Employment with Defendant Procon, Inc., as a material control supervisor. Procon, a construction company, is an employer within the meaning of 42 U.S.C.S. § 2000e(b) (Law.Co-Op. 1978), and at all times relevant to this suit was engaged in construction projects for Gulf Oil Corporation.

A material control supervisor is primarily responsible for issuing purchase orders to local suppliers for materials and equipment requisitioned by the construction field personnel. It is undisputed that a delay in processing the purchase orders could idle construction crews, increase labor costs and postpone completion of construction projects. Plaintiff was well educated, understood his position and was capable of performing his tasks. However, it seems these attributes did not always redound to the benefit of Procon or O'Loughlin.

An antagonistic relationship had developed between Plaintiff and some of his associates and superiors. Plaintiff alleges that these co-workers had condoned racially defamatory statements directed at him and had subverted the rules and regulations in the procurement of material and equipment by acquiring the latter without going through Plaintiff. Defendant maintains that it was necessary to circumvent Plaintiff because Plaintiff was delinquent in executing purchase orders. In retaliation for the acts of circumvention, Plaintiff would insist upon strict implementation of standard operating procedure, admitting that on one occasion he refused to write a purchase order for an item his superior, Mr. Smith, had authorized a field worker to obtain. The delays in the issuance of purchase orders continued and the vicious circle repeated itself.

Plaintiff complained to Mr. de la Campa, the manager of construction for Procon and himself a Cuban, about the racial epithets. Mr. de la Campa investigated one alleged incident of racial bigotry and satisfied himself that no disciplinary action was warranted. Mr. de la Campa testified that Plaintiff was not discriminated against because of his race or national origin while employed by Procon and that no other blacks had complained of racial discord.

Sometime thereafter Mr. Smith terminated Plaintiff, allegedly because of a reduction in the work force. Mr. Smith later testified that a work force reduction was not the real reason. Rather, Plaintiff was terminated because of his refusal to properly discharge his duties. The false explanation was allegedly given so that Plaintiff would be eligible for severance pay and unemployment benefits. Plaintiff's responsibilities were assumed by Ms. Woods, a white female, who had some experience as a material control supervisor, but whose

qualifications for that position were less than Plaintiff's.

Plaintiff timely filed his section 1981 claim, under which he must prove purposeful or intentional racial discrimination. *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir.1980).[1] A question exists whether Plaintiff may properly maintain his Title VII claim, under which Plaintiff must prove that his employer engaged in a pattern or practice of intentional discrimination based upon, *inter alia*, race and national origin, and/or that Plaintiff was the victim of a particular decision motivated by discriminatory intent. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396 (1977).

■ Plaintiff was three (3) days late in filing the statutorily required discrimination complaint with the Equal Employment Opportunity Commission (EEOC). Defendants contend that a late filing with the EEOC is an unqualified bar to a Title VII suit in Federal court. However, in *Zipes et al v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1981), the Supreme Court held that a seasonable filing of a discrimination charge with the EEOC is not a jurisdictional absolute for the maintenance of a Title VII claim. Therefore, Plaintiff's three-day delay does not bar us from hearing his Title VII cause of action.

■ When, as here, section 1981 is used as a companion remedy to section 2000e, the elements of each cause of action may be construed as identical, and the requisite intent under section 1981 may be inferred as it is under section 2000e. *Whiting*, 616 F.2d at 121.[2]

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the Supreme Court held that in a Title VII cause of action for employment discrimination, the Plaintiff has the initial burden of establishing a prima facie case. In *McDonnell Douglas* the Court propounded a four-pronged test which, though schematized for application in discriminatory hiring cases, has been extended by this Circuit to discriminatory termination cases. *Burdine v. Texas Department of Community Affairs*, 608 F.2d 563 (5th Cir.1979). The Plaintiff must prove that (1) he belongs to a group protected by Title VII; (2) he was qualified for the position he held; (3) he was terminated; (4) after his termination, the employer hired a person not in Plaintiff's protected class, or retained those having comparable or lesser qualifications, not in Plaintiff's protected class. *Id.* at 566, 568. If the Plaintiff can make a prima facie showing of discriminatory discharge, the burden shifts to the employer to prove some legitimate, nondiscriminatory reason for the termination. *Green*, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer succeeds on that score, the Plaintiff must demonstrate that the Defendant's asserted justification for the discharge is merely a pretext for a racially discriminatory decision. *Id.* at 804, 93 S.Ct. at 1825.

■ Plaintiff at bar has properly set out a prima facie case of employment discrimination. Plaintiff has met elements (1) and (3) of the *Green* test: he has shown that he belongs to a class protected by Title VII and that he was terminated. Plaintiff has also satisfied *Green* elements (2) and (4). Regarding element (2), Plaintiff has demonstrated that he was qualified for the material control supervisor's position. That he understood and could meticulously apply standard operating procedure is but one factor denoting Plaintiff's qualifications.

---

1. Section 1981 may not be used as a basis for court action seeking relief from employment discrimination based upon national origin. *E.g., Marshall v. Plumbers and Steamfitters Local Union 60, et al,* 343 F.Supp. 70, 72 (E.D.La. 1972).

2. The Supreme Court has stated that although Title VII and section 1981 are independent remedies, "the two procedures augment each other and are not mutually exclusive." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975).

The fact that Plaintiff would sometimes use a rigorous devotion to rules and regulations as a sword by which to antagonize co-workers speaks to Plaintiff's personality rather than to his ability to perform his job. Plaintiff satisfied *Green* element (4) when Defendant replaced Plaintiff with Ms. Woods, a person not in Plaintiff's protected class and one whose qualifications for the relevant position were indisputably inferior to Plaintiff's.

Nevertheless, Defendant has successfully rebutted Plaintiff's prima facie case by articulating a legitimate, nondiscriminatory justification for its termination of Plaintiff; a justification that Plaintiff has not demonstrated was a ruse for a racially discriminatory decision.

Defendant fired Plaintiff because Plaintiff was unwilling to cooperate with his co-workers or perform his duties in a workmanlike manner. Plaintiff would have this court mistakenly conclude that because Defendant proffered an erroneous justification for the discharge ipso facto the justification is pretextual. A contextual analysis of the pretext language that appears in the Supreme Court cases we have cited discloses that a justification is pretextual only if it camouflages a discriminatory decision. Defendant's decision to discharge Plaintiff, though purposely mischaracterized, was animated by business necessity and had nothing to do with Plaintiff's skin color or national origin. Plaintiff has introduced no competent evidence that Defendant's real and presumptively valid reason for the termination was a smoke-screen for a racially discriminatory decision. See *Green*, 411 U.S. at 804, 805, 93 S.Ct. at 1825.

A fortiori, we find no nexus between Plaintiff's discharge and the alleged racial epithets. Those possible instances of racial vituperation were at most isolated acts of individual bigotry. Taken singularly or in combination, they do not constitute a movement in an orchestration underscored by racial animosity. Mr. de la Campa's testimony that Mr. O'Loughlin was never discriminated against because he was Cuban or black and that no other black employees had complained of racial slurs confirms the cogency of our conclusions.

Plaintiff's cause of action for wrongful discharge is similarly without merit. As the court explained in *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex.1985), Texas subscribes to the traditional employment at-will doctrine that allows for the unilateral termination of an employment relationship without cause. As *Sabine Pilot* also explained, there is only one narrow exception to that rule: an employer may not discharge an at-will employee for the sole reason that the employee refuses to perform an illegal act. *Id.* at 735.

Consequently, there being no allegation of a contractual provision preventing the application of the at-will doctrine to this case, nor an allegation that Plaintiff was discharged because of his refusal to carry out an illegal act, Plaintiff's wrongful discharge cause of action is meritless.

Accordingly, Plaintiff has not stated claims for which relief can be granted under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et seq.*, 42 U.S.C.S. § 1981, or for wrongful discharge under Texas state law.

Judgment to be entered for Defendant.