**Frank J. O'BRIEN, IV**

v.

**CITY OF PHILADELPHIA, Philadelphia Police Department, Mayor W. Wilson Goode, Police Commissioner Willie Williams, Inspector William Bergman, John Straub, Esquire, Inspector Sylvester Johnson, Lieutenant Ronald Green and Lieutenant Mark Dorsey.**

Civ. A. No. 92–6850.

United States District Court, E.D. Pennsylvania.

Nov. 22, 1993.

Frank J. O'Brien, IV, pro se.

E. Jane Hix, Asst. City Sol., Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil action has been brought before the Court upon the defendants' motion for summary judgment or, in the alternative, for the entry of a default judgment against the plaintiff, Frank O'Brien, IV. In accordance with the rationale set forth in the paragraphs which follow, the motion for summary judgment is granted.

## I. STATEMENT OF THE CASE

The relevant facts underlying this case, as presented in the parties pleadings, may be succinctly summarized. In March, 1990, the plaintiff, who was then and still is employed as a police officer for the Southeastern Pennsylvania Transportation Authority ("SEPTA"), applied for a police officer's position with the defendant Philadelphia Police Department. In furtherance of that application, Mr. O'Brien took and, according to the allegations contained in the complaint, passed all of the necessary medical, polygraph, written and oral psychological tests. However, on June 15, 1990, Mr. O'Brien received notice from the Philadelphia Police Department's Headquarters Investigation Unit that it was recommending that the Police Commissioner reject plaintiff's application because of criminal conduct. The plaintiff appealed this decision to a police department review board and thereafter learned that the recommended rejection was based in part on an allegation by his mother-in-law that he had assaulted her and on the fact that his estranged wife had obtained a Protection from Abuse Order against him. The appeal board subsequently recommended that Plaintiff be placed back into the hiring process and this recommenda-

tion was approved by the Police Commissioner.

In October, 1990, Mr. O'Brien was again given polygraph and medical examinations which he passed a second time. In April, 1991, he then appeared before the Department's Applicant Acceptance Committee to explain the allegations of his mother-in-law and estranged wife and to explain the circumstances surrounding the then-recent filing of a civil lawsuit charging him and another SEPTA police officer with the use of excessive force against an individual using the SEPTA transportation system. On August 19, 1991, plaintiff took and passed another psychological examination. Nevertheless, on August 27, 1991, Mr. O'Brien was notified that his application for employment as a Philadelphia police officer had been finally rejected on the basis of criminal conduct.

In November, 1992, the plaintiff, acting pro se, commenced this lawsuit against the above-captioned defendants alleging that they violated his civil and constitutional rights in discriminating against and refusing to hire him on the basis of his race and national origin thereby causing him to suffer emotional distress. Although the amended complaint is somewhat unclear, it appears that the plaintiff has endeavored to state disparate impact and disparate treatment claims for relief under Title VII and/or Section 1981 of the Civil Rights Act and under the Fourteenth Amendment to the U.S. Constitution.

## II. DISCUSSION

### 1. Legal Standards Applicable to Summary Judgment Motions.

The prevailing principles to be applied by the district courts in ruling upon motions for summary judgment are codified in Fed. R.Civ.P. 56(c):

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, the district courts must look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir.1988), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

Generally speaking, the party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a summary judgment motion, the court must assume the truth of the non-movant's evidence and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Lockley v. Chao*, 812 F.Supp. 246, 248–249 (D.D.C.1993).

This does not mean, however, that a non-moving party may rest upon the mere allegations contained in his or her pleadings in defense of a summary judgment motion. To the contrary, Fed.R.Civ.P. 56(e) states, in relevant part:

> When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, while the burden of demonstrating the absence of genuine issues of material fact is initially on the moving party, once such a showing has been made, the non-movant must present evidence through affidavits, de-

positions or admissions on file which comprise of a showing sufficient to establish the existence of every element essential to that party's case. *See: Celotex v. Catrett, supra,* 477 U.S. at 321–323, 106 S.Ct. at 2552–2553; *Keyes v. National Railroad Passenger Corp.,* 756 F.Supp. 863 (E.D.Pa.1991); *Applications Research Corp. v. Naval Air Development Center,* 752 F.Supp. 660 (E.D.Pa.1990).

### 2. *Plaintiff's Claim Under Title VII of the Civil Rights Act*

■ Plaintiff first endeavors to state a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–1, *et seq.* by contending, *inter alia,* that in bypassing him in favor of allegedly less qualified minority applicants, the defendants discriminated against him on the basis of his race and/or national origin. In this regard, the amended complaint avers that the City of Philadelphia has previously hired minority applicants who had criminal histories for its police department and thus the department's decision to reject Mr. O'Brien on the basis of his prior "criminal conduct" was a mere pretext. In addition, Plaintiff's amended complaint appears to challenge the Philadelphia Police Department's hiring system in that it alleges that the system "has double standards for white and minority persons." From these allegations then, we conclude that the plaintiff wishes to pursue his Title VII race discrimination claim under both disparate treatment and disparate impact theories.

■ Title VII's general proscription against discrimination in employment practices and decisions is set forth at 42 U.S.C. § 2000e–2(a) which states:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

By this language, Title VII prohibits all discrimination in employment based upon race, sex, or national origin and has as its broad objective the efficient and trustworthy workmanship assured through fair and neutral employment and personnel decisions. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 259, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981) citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). Title VII, however, was not intended to diminish traditional management prerogatives; it therefore neither demands that an employer give preferential treatment to minorities or women nor requires the employer to restructure his employment practices to maximize the number of minorities and women hired. *Id.,* citing *United Steelworkers of America v. Weber,* 443 U.S. 193, 205–206, 99 S.Ct. 2721, 2728–2729, 61 L.Ed.2d 480 (1979) and *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577–578, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957 (1978).

■ With these goals in mind then, it is clear that Title VII may be violated not only by obvious, intentional acts of discrimination but also by employment policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 349, 97 S.Ct. 1843, 1861, 52 L.Ed.2d 396 (1977). In other words, a violation of Title VII can be shown in two separate and distinct ways: under either a disparate treatment or a disparate impact theory. A disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII. *E.E.O.C. v. Metal Service Co.,* 892 F.2d 341, 347 (3rd Cir.1990).

■ To establish entitlement to relief under a theory of disparate treatment, the plaintiff must first establish by a preponder-

ance of the evidence a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 252, 101 S.Ct. at 1093. The plaintiff can establish a prima facie case by showing: (1) that he or she is a member of a protected class; (2) that he or she was qualified for the job but was nevertheless rejected for the position; and (3) that non-members of the protected class were treated more favorably. *Ezold v. Wolf, Block, Schorr and Solis-Cohen,* 983 F.2d 509, 522 (3rd Cir.1992) citing, *inter alia, McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Roebuck v. Drexel University,* 852 F.2d 715, 726 (3rd Cir.1988). If the plaintiff is able to establish such a prima facie case, the burden of production shifts to the defendant to clearly set forth a legitimate, non-discriminatory reason for the discharge. In this regard, a satisfactory explanation dispels the inference of discrimination arising from the plaintiff's initial evidence. *Maier v. Police and Fire Federal Credit Union,* 813 F.Supp. 326, 331 (E.D.Pa. 1993) citing *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095. Then, if such a facially legitimate reason is proffered, the employee must then bear the burden of demonstrating by a preponderance of the evidence that the reason given by his employer is in fact merely a pretext, i.e. a fiction which obscures the reality of racial discrimination. *Lewis v. University of Pittsburgh,* 725 F.2d 910, 914 (3rd Cir.1983). This may be accomplished either directly, by showing that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the asserted reason is unworthy of credence. *Ezold,* at 523; *Maier,* at 331. Throughout it all, however, it must be shown that the employer bore a discriminatory animus against the employee and that this animus manifested itself in some challenged action, whether it be dismissal, failure to promote or failure to hire. *Lewis,* at 914.

■■■■■ An action premised on disparate impact, in contrast, is made out when an employer is shown to have used a specific employment practice, neutral on its face but causing a substantial adverse impact on a protected group, and which cannot be justified as serving a legitimate business goal of the employer. Unlike disparate treatment cases, it is not necessary for the plaintiff in a disparate impact case to present evidence of the employer's subjective intent to discriminate. *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 2119, 2125–2127, 104 L.Ed.2d 733 (1989). Like the analytical proof structure under the disparate treatment theory, the burden of showing disparate impact always remains with the plaintiff and the employer has only the burden of production on the issue of business justification once a prima facie case has been established. *E.E.O.C. v. Metal Service Co., supra,* at 346.

■■■■■ To make out a prima facie case on impact, a plaintiff must first demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack. *Wards Cove,* 490 U.S. at 655–657, 109 S.Ct. at 2124–2125. Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs because of their membership in a protected group. *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 2789, 101 L.Ed.2d 827 (1988). Thereafter, once a plaintiff has made out a prima facie case of disparate impact and when the defendant has met its burden of producing evidence that its employment practices are based on legitimate business reasons, the plaintiff must then show that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship. *Id.,* 487 U.S. at 998, 108 S.Ct. at 2790.

■■■■■ Finally, it must be noted that inasmuch as the terms of Title VII are not limited to discrimination against members of any particular race, Title VII prohibits racial discrimination in private employment against white persons upon the same standards as racial discrimination against non-whites. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 279–280, 96 S.Ct. 2574, 2578–2579, 49 L.Ed.2d 493 (1976); *Dougher-*

*ty v. Barry,* 607 F.Supp. 1271, 1281–1282 (D.D.C.1985), vacated on other grounds, 869 F.2d 605 (D.C.Cir.1989).

In reviewing the case at bar in light of the preceding principles and in the manner most favorable to the plaintiff as the non-moving party, we cannot find that he has demonstrated *any* of the elements necessary to make out a prima facie case under either of the above-referenced theories. Indeed, Plaintiff's evidence in this case consists primarily of his own testimony that he heard from his father that the individuals listed on his self-executing disclosure form had information regarding his case, although he does not know and/or does not recall what information any of the listed individuals may have. The plaintiff further supplied evidence in the form of a photocopy of a diploma dated August 19, 1988 from the Philadelphia Police Training Bureau evincing his completion of the studies and examinations prescribed for municipal police officers by the Commonwealth of Pennsylvania. Finally, Mr. O'Brien's father testified that he had general conversations with "many, many people" within the Philadelphia Police Department about the "hiring practices of the Police Department and the racial discrimination going on in the BIU unit." There is no tangible documentary, statistical or corroborating testimonial evidence to support the plaintiff's averments notwithstanding that the City has produced affidavits and documentary evidence that Mr. O'Brien was not rejected on the basis of his race or national origin and that of the 211 applicants for police officer positions rejected for criminal conduct since the Philadelphia Police Department revamped its hiring procedures in 1986, 79 were white and 132 were minorities. At best then, the plaintiff has shown only that he passed the physical, medical and psychological tests that are pre-requisite to becoming a Philadelphia Police Officer. Mr. O'Brien has not made the necessary prima facie showing to entitle him to relief under Title VII of the Civil Rights Act and summary judgment must therefore be entered in favor of the defendants on that claim.

### 3. *Plaintiff's Claim under Section 1981*

Mr. O'Brien's amended complaint likewise evinces an attempt to state a claim for relief under Section 1981 of the Civil Rights Act. Subsection (a) of § 1981 provides:

### (a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Generally, the legal elements of a section 1981 claim are identical to those of a Title VII disparate treatment claim, and, therefore, analysis under one theory is usually determinative of the other claim. *Washington v. Brown & Williamson Tobacco Corp.,* 756 F.Supp. 1547, 1555 (M.D.Ga.1991), aff'd at 959 F.2d 1566 (11th Cir.1992); *O'Loughlin v. Procon, Inc.,* 627 F.Supp. 675, 677 (E.D.Tex 1986), aff'd at 808 F.2d 54 (5th Cir.1986). Accordingly, the plaintiff will be required to establish a prima facie case of discrimination in accordance with the *McDonnell Douglas* model outlined above before the burden shifts to the defendant to show legitimate nondiscriminatory considerations upon which its actions were based. In addition, the plaintiff must prove a discriminatory motive on the part of the defendant-employer. *Wilson v. Legal Assistance of North Dakota,* 669 F.2d 562, 564 (8th Cir. 1981). *See Also: Lewis v. University of Pittsburgh,* 725 F.2d 910, 915, note 5 (3rd Cir.1983). As is the case with Title VII cases, any identifiable class of persons, including caucasians, who are subjected to discrimination solely because of their ancestry or ethnic characteristics are protected and may maintain a cause of action for redress against racial discrimination in an employment setting under § 1981. *See: Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 609, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987).

In revisiting the analysis employed with respect to the plaintiff's Title VII claim and to the extent that the complaint states a cause of action under Section 1981, we similarly must conclude that Mr. O'Brien has failed to offer even a scintilla of evidence to rebut that provided by the defendant that the decision not to hire him was grounded upon a legitimate business reason which was in no way related to his race. Summary judgment shall therefore be entered in favor of the defendant as to the § 1981 claim as well.

### 4. *Plaintiff's Claim Under the Fourteenth Amendment*

Insofar as the plaintiff's amended complaint includes allegations to the effect that the police department's rejection of his employment application on the basis of the allegations of his mother-in-law deprived him of his rights to due process of law, it appears that the plaintiff has also endeavored to plead a cause of action under the Fourteenth Amendment to the United States Constitution. Upon close and careful scrutiny of the existing record in this matter, however, we find that summary judgment is appropriately entered in Defendants' favor on this claim as well.

It is well established that the requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property and when protected interests are implicated, the right to some kind of prior hearing is paramount. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). To determine whether due process requirements apply in the first place, the nature of the interest at stake must be examined. *Id.,* 408 U.S. at 571, 92 S.Ct. at 2706.

A property interest in employment will be found to exist where state law supports a claim of entitlement to continued employment. *Bradley v. Pittsburgh Board of Education,* 913 F.2d 1064, 1078 (3rd Cir. 1990). Permanent employment status, by itself, is not a property right. *Braderman v. Pennsylvania Housing Finance Agency,* 598 F.Supp. 834, 841 (M.D.Pa.1984) citing, *inter alia, Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A property interest in state employment exists where an employee has a legitimate claim of entitlement to such employment under state law, policy or custom. An employee, however, must have more than an abstract type of unilateral expectation. *Sanguigni v. Pittsburgh Board of Public Education,* 968 F.2d 393, 401 (3rd Cir.1992).

Similarly, to state a valid claim of a protected liberty interest, a plaintiff must plead and prove that the allegedly stigmatizing information was published or otherwise disseminated by his government employer to the public. *Anderson v. City of Philadelphia,* 845 F.2d 1216, 1222 (3rd Cir.1988); *Chabal v. Reagan,* 841 F.2d 1216, 1223 (3rd Cir.1988). Again, however, neither a liberty nor a property interest in public employment can be found to exist unless such interest is created by state law or some similar independent source. Thus, to prevail, the plaintiff must show that under Pennsylvania law, he had a legitimate claim of entitlement to employment as a city policeman. *Anderson,* at 1220.

In the instant case, Mr. O'Brien has provided this court with no evidence and no state law authority which could be construed to confer upon him a liberty or property interest in his application to become a Philadelphia police officer. Moreover, nowhere in plaintiff's pleadings are there any allegations that the city defendants published or notified any third party or the public about its reasons for rejecting Mr. O'Brien's application nor is it alleged that Mr. O'Brien suffered any harm as the result of the denial of his application with the exception of the fact that he did not receive the city policeman's job which he desired. Rather, the record indicates that prior to his application, Plaintiff was employed as a SEPTA policeman and that he remains so employed today.

Finally, we also note that as the plaintiff's amended complaint and the affidavit of John P. Straub both indicate, Mr. O'Brien was given the opportunity and did appear before the Police Department's Review Board to

explain the allegations made by his mother-in-law and the circumstances surrounding the entering of the Protection From Abuse Order by his wife and the lawsuit against him and another SEPTA officer for use of excessive force. Accordingly, we cannot find that the plaintiff will be able to make out a case against these defendants for a violation of his Fourteenth Amendment rights and summary judgment shall therefore be entered in favor of the defendants and against the plaintiff on all of the claims presented in his amended complaint pursuant to the following order.

## ORDER

AND NOW, this 22nd day of November, 1993, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and Judgment in no amount is hereby entered in favor of the defendants and against the plaintiff on all claims raised in the plaintiff's amended complaint.