Ismael **RODRIGUEZ**

v.

**Polo Ralph LAUREN.**

**No. CIV.A. 99–1857.**

United States District Court, E.D. Pennsylvania.

Dec. 3, 1999.

---

Ismael Rodriguez, Reading, PA, pro se.

1. Plaintiff filed suit in the Court of Common Pleas of Berks County, Pennsylvania, and defendant removed to this Court.

2. Improperly captioned as "Polo Ralph Lauren."

3. Defendant moved for dismissal, or, in the alternative, for summary judgment.

John P. Quirke, Wolf, Block, Shorr and Solis–Cohen, LLP, Philadelphia, PA, for Defendant Polo Ralph Lauren.

*MEMORANDUM*

DALZELL, District Judge.

Ismael Rodriguez, acting *pro se*, has sued[1] Polo Pennsylvania LLC[2] ("Polo") alleging that his termination from his job as a security guard at a Polo store in Reading, Pennsylvania violated 42 U.S.C. § 2000e (Title VII), 43 P.S. § 955 (the Pennsylvania Human Relations Act), and 42 U.S.C. § 1981. He specifically alleges that he was terminated because he is Latino.

Rodriguez and Polo have each filed cross-motions for summary judgment[3] and each has filed a response. For the reasons set forth below, we will grant summary judgment for Polo as to all claims in plaintiff's complaint.

I. *Background*

A. *Facts*

In January, 1998, Rodriguez answered a newspaper employment advertisement placed by Advance Security seeking applicants for the job of security guard with Advance Security. Advance Security hired plaintiff on January 12, 1998, and assigned him to work at defendant's Polo Ralph Lauren Factory Store in Reading, Pennsylvania.[4] On February 6, 1998, plaintiff's employment with Advance Security was terminated; he was informed of this in a phone call with Rex Francis, Advance Security's site supervisor.

B. *Plaintiff's Claims*

Rodriguez claims in his complaint and in his response to defendant's motion for

4. Advance Security provided security services to Polo according to the terms of a "Security Services Agreement" dated July 25, 1997. Although the newspaper advertisement did not state this, the position Advance Security sought to fill through the ad was at defendant's store in Reading.

summary judgment that he was fired from his job on February 6, 1998, with no cause given, and replaced by white males. He claims that Steven Brader, Polo's Loss Prevention Manager at the Reading store, made negative statements about Rodriguez to other guards, including statements derogatory to Rodriguez's Latino ethnicity, and that Brader harassed Rodriguez by following him around the store. Rodriguez claims that Brader prompted Advance Security to terminate Rodriguez, as well as other minority guards, and had them replaced with white male guards.

## II. Rodriguez's Motion for Summary Judgment [5]

In a one-page handwritten document [6], unsupported by any exhibits, Rodriguez argues that he should be granted summary judgment because: 1) there is no dispute over material fact, and 2) Polo had not made any "good faith attempt[s] to settle this case." Pl.'s Req. Mot. for Summ. J. at 1. However, the bare, unsubstantiated assertion that there is no disputed issue of material fact will not suffice to carry the moving party's burden of demonstrating that such is the case, see Matsushita, 475 U.S. at 585 n. 10, 106 S.Ct. 1348, and evidence of settlement negotiations may not be considered in deciding the instant motions, see Fed.R.Evid. 408. We will therefore deny Rodriguez's motion for summary judgment.

## III. Polo's Motion for Summary Judgment

### A. Title VII and PHRA Claims

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Pennsylvania Human Relations Act states that it is an unlawful discriminatory practice "[f]or any employer because of the race, color ... [or] national origin ... of any individual" to discharge that individual from employment. 43 P.S. § 955(a). The Pennsylvania Human Relations Act is applied in accordance with Title VII, see Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

A threshold legal question in considering liability under Title VII is whether the defendant is plaintiff's employer, and in its motion for summary judgment, Polo claims that it can have no Title VII liability to Rodriguez precisely because Polo was not

---

**5.** A summary judgment motion should only be granted if we conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). In a motion for summary judgment, the moving party bears the burden of proving that no genuine issue of material fact is in dispute, see Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and all evidence must be viewed in the light most favorable to the nonmoving party, see id. at 587, 106 S.Ct. 1348. Once the moving party has carried its initial burden, then the nonmoving party "must come forward with 'specific facts showing there is a genuine issue for trial,'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986) (holding that the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, we must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995).

**6.** "[A] pro se [litigant's] pleadings should be ... construed liberally." Lewis v. Attorney Gen. of the United States, 878 F.2d 714, 722 (3d Cir.1989).

his "employer" within the meaning of Title VII [7] and the PHRA [8]. In order to determine if an individual is an "employee" for the purposes of Title VII, we look to the "common-law" test the Supreme Court endorsed in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). In *Darden*, the Court considered the meaning of "employee" for ERISA purposes, and held that in interpreting the meaning of "employee" in a statute that does not helpfully define it, courts should look to common-law agency doctrine. *Id.* at 322–23, 112 S.Ct. 1344. Although *Darden* did not consider the Title VII context explicitly, the breadth of the opinion's language has led trial courts to adopt the common-law test for Title VII in lieu of the "hybrid test" our Court of Appeals endorsed in 1983 in *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 37 (3d Cir.1983). *See, e.g., Hernandez v. Norris Square Civic Ass'n*, No. 94–5925, 1995 WL 365436 (E.D.Pa. June 13, 1995); *Powell–Ross v. All Star Radio, Inc.*, No. 95–1078, 1995 WL 491291 (E.D.Pa. Aug. 16, 1995) [9].

7. Some courts have interpreted the "or otherwise discriminate" language from 42 U.S.C § 2000e–2(a)(1) quoted in main text above to mean that any employer may be held liable under Title VII for interfering with an employment relationship, even if the plaintiff was not actually the employee of the defendant, *see e.g., Kemether v. Pennsylvania Interscholastic Athletic Ass'n*, No. 96–6986, 1999 WL 1012957 (E.D.Pa. Nov. 8, 1999) at *11 n. 17 (citing cases from other circuits); *Trowery v. CMI Janitorial Servs.*, No. 85–3453, 1986 WL 5532 (E.D.Pa. May 8, 1986) at * 1 (same). For such liability to attach, plaintiff must be an employee of a third party (as Rodriguez was an employee of Advance Security here) and the defendant must be an employer of others (but not the plaintiff) under the meaning of Title VII. Assuming that our Court of Appeals would allow this sort of Title VII liability, *see Krouse v. American Sterilizer Co.*, 984 F.Supp. 891, 907 (W.D.Pa.1996) (noting that the Third Circuit has not explicitly done so), the finding of such liability requires that the defendant have exercised control over plaintiff's employment relationship with the third party, and that the defendant was the *de facto* or indirect employer of the plaintiff, *see Bender v. Suburban Hosp. Inc.*, 159 F.3d 186, 188 (4th Cir.1998) (discussing *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973) and *EEOC v. Illinois*, 69 F.3d 167 (7th Cir. 1995)). To the extent that the contacts between Polo and Rodriguez, discussed in the margin below, might be characterized as amounting to "control" or *"de facto "* or "indirect" employment of Rodriguez by Polo, there is nonetheless no indication, on the evidence properly before us, that Polo in fact interfered with the employment relationship between Rodriguez and ·Advance Security. *See infra* our discussion of plaintiff's § 1981 claims.

8. We recognize that although the PHRA is applied as is Title VII, liability under the PHRA may be broader than that under Title VII. Specifically, we note that 43 P.S. § 955(e) states that it is an unlawful discriminatory practice "[f]or any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice...." *See Dici*, 91 F.3d at 552. That is, with reference to this case, even if Polo were not Rodriguez's employer it could still be held liable under the PHRA if it aided, incited, or compelled Rodriguez's actual employer— which Polo argues is Advance Security—to discriminate against Rodriguez in his dismissal. Since, as noted in main text above, Rodriguez's claim is that Steven Brader, Polo's Loss Prevention Manager, was the source of the discriminatory conduct towards him, a PHRA claim could at least conceivably lie here against Polo even though Polo isn't subject to Title VII liability as a non-employer.

Even if such a claim were to be made regarding Rodriguez's termination, however, it would not survive summary judgment here. As will be discussed below, the analysis under 42 U.S.C. § 1981 in cases of employment discrimination is the same as that used for Title VII and therefore, by syllogism, the same as that for the PHRA. And, as with PHRA claims under 43 P.S. § 955(e), § 1981 claims are not limited to employers. Thus, as goes the § 1981 analysis of Rodriguez's termination, so will go a potential PHRA claim under § 955(e). As we show below, defendant's § 1981 claims do not survive summary judgment on this record, and thus, equally, no potential § 955(e) claim would survive summary judgment.

9. Other Courts of Appeals have applied *Darden* to the definition of "employee" for the purposes of employment discrimination statutes, *see Powell–Ross*, 1995 WL 491291 at *7 n. 7. Moreover, "in practice there is little discernable difference between the hybrid test

■ Under the *Darden* common-law agency test, we consider a long, non-exhaustive list of elements: 1) the hiring party's right to control the manner and means by which the product is accomplished, 2) the skill required, 3) the source of the instrumentalities and tools, 4) the location of the work, 5) the duration of the relationship between the parties, 6) whether the hiring party has the right to assign additional projects to the hired party, 7) the extent of the hired party's discretion over when and how long to work, 8) the method of payment, 9) the hired party's role in hiring and paying assistants, 10) whether the work is part of the regular business of the hiring party, 11) the provision of employee benefits, 12) the tax treatment of the hired party. *See Darden,* 503 U.S. at 323–24, 112 S.Ct. 1344.

■ On the undisputed facts of this case [10], Polo cannot be Rodriguez's employer for purposes of Title VII.

Rodriguez was hired by Advance Security, not Polo, and it was Advance Security that paid him and provided him with

---

and the common law agency test," *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993).

**10.** It is appropriate at this point to discuss the content of *pro se* plaintiff Rodriguez's response to Polo's motion for summary judgment. The response comprises four typed pages and, although Rodriguez does not provide citation to them in the response, attached to it are what amount to twelve exhibits. Our decision here is based on there being no genuine issue of material fact, *see* Fed.R.Civ.P. 56(c), and because of the need to grant some latitude towards *pro se* litigants, we summarize here the contents of plaintiff's exhibits (the grouping and exhibit numbers are our characterization, not plaintiff's): 1) an unsworn statement from a co-worker, James J. Thorpe, corroborating Rodriguez's claims of discrimination; 2) the eight-page report of Yvette Santiago, investigator for Reading Commission on Human Relations; 3) Four Advance Security work schedules for the Reading Polo store and what appears to be one of Rodriguez's time sheets; 4) A Decision and Order of the City of Reading Commission on Human Relations dated September 24, 1998 holding that Rodriguez had "failed to establish probable cause to believe that he was discriminated against on account of his national origin"; 5) An Order of the City of Reading Commission on Human Relations dated December 13, 1998 affirming their decision of September 24, 1998; 6) Rodriguez's request for a criminal record check and child abuse history clearance, both reporting no history; 7) Two requests for vacation days; 8) Handwritten notes from a meeting on January 27, 1998 attended by Rodriguez and a sign-in sheet from a "loss prevention weekly meeting" of March 13, 1999; 9) An information sheet listing "fitting room policy" and a two sheets with emergency and non-emergency phone numbers; 10) Two letters of recommendation from previous employers; 11) a one page memo of "opening and closing responsibilities" from Steven Brader to "loss prevention personnel"; 12) a "notice of determination" from the Department of Labor and Industry concluding that there was no showing of "willful misconduct" with respect to Rodriguez's termination from Advance Security.

As an initial matter, we find that we cannot consider the contents of the unsworn statement from James J. Thorpe, listed as item # 1 above. Unsworn statements do not meet the requirements of "affidavits" and thus cannot be used to support motions for summary judgment or responses thereto, *see Small v. Lehman,* 98 F.3d 762, 764 n. 5 (3d Cir.1996). That the plaintiff is *pro se* is no reason to relax this requirement, *see id.* (holding that unsworn statements submitted by *pro se* prisoner litigants could not be considered). Similarly, the text of the plaintiff's response itself, which contains a rehearsal of his factual claims against Polo, may not be considered, as "[a]n unsworn memorandum opposing a party's motion for summary judgment is not an affidavit." *Pastore v. Bell Tel. Co.,* 24 F.3d 508, 511 (3d Cir.1994) (quoting *Radich v. Goode,* 886 F.2d 1391, 1394 (3d Cir.1989)).

In a like fashion, we decline to consider the summaries of witness statements included in Yvette Santiago's report, listed as item # 2 above. Ms. Santiago's report appears to be an internal document reporting the results of her investigation of Mr. Rodriguez's claims to Louis Shucker, Solicitor of the City of Reading Human Relations Commission. Although the report itself is a report of an official investigation, and therefore not subject to exclusion as hearsay, *see* Fed.R.Evid. 803(8)(C), there is no indication that the statements within it were sworn and therefore consideration of this report would amount to inappropriate consideration of witnesses' unsworn statements. Moreover, the report itself was not properly authenticated by any sworn statement.

health insurance and other benefits. *See* Decl. of Steven Brader ¶ 6. Rodriguez was reported to the Internal Revenue Service to be an employee of Advance Security, and Advance Security withheld taxes from Rodriguez's pay and he received his paycheck from the Advance Security site supervisor, Rex Francis. *See id.;* Dep. of Ismael Rodriguez at 57 (Decl. of John P. Quirke Ex. A)[11]. Advance Security issued him his guard uniform (*see id.;* Dep. of Ismael Rodriguez at 58–59), and on the job, Rex Francis of Advance Security supervised him, *see* Dep. of Ismael Rodriguez at 57–60, 62–64 (detailing Francis's involvement in Rodriguez's employment). Polo had no power to assign Rodriguez "additional projects" with respect to his employment as a security guard, and Polo is a clothing retailer, not a security service seller. Simply put, Rodriguez was an employee of Advance Security, not of Polo, and his work for Advance Security at Polo's store was performed pursuant to Advance Security's contract with Polo for the provision of security services.[12]

We therefore find that Title VII liability does not attach to Polo as plaintiff's employer and will grant summary judgment to Polo on the Title VII claims.

### B. *42 U.S.C. § 1981 Claims*

42 U.S.C. § 1981(a) states that "All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens. . . ." Rodriguez claims that his rights under § 1981 were violated when Steven Brader forced Advance Security to fire him because of his Latino ethnicity.

■ As an initial matter, we note that in employment cases, the analysis of a § 1981 claim is done using the jurisprudential tests developed for Title VII claims, *see Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 n. 5 (3d Cir.1983); *O'Brien v. City of Philadelphia,* 837 F.Supp. 692, 699 (E.D.Pa.1993). Claims under Title VII fall into two general categories: "mixed motive" cases, which are evaluated under a framework set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775,

---

**11.** Plaintiff evidently believes that this Court was provided, from some source, with a complete copy of his deposition transcript; we note for his benefit that there is no requirement, neither is it encouraged, for parties to submit complete copies of deposition transcripts to the Court. The Court does, of course, consider excerpts of deposition transcripts as exhibits attached to motions for summary judgment, with proper citation to those transcripts contained within such motions. Contrary to plaintiff's claims, there is nothing unusual or underhanded in defendant's counsel having attached only selected pages in support of his argument for summary judgment.

**12.** It is true that some elements do exist that superficially suggest a possible employer/employee relationship between Rodriguez and Polo. For example, the contract between Polo and Advance Security appears to be a form contract used by Advance Security with all its clients, and paragraph 4(c) of the Terms and Conditions of that contract states that "CLIENT [here, Polo] may reasonably remove any employee assigned provided such removal is not in violation of law." *See* Decl. of Steven Brader Ex. A. While this clause appears to give the client some limited level of control over who Advance Security stations in a particular location, it does not operate to make Polo Rodriguez's employer here, especially as neither party alleges that Rodriguez's dismissal resulted from an exercise of this clause. Similarly, the mere fact that Steven Brader, Polo's Loss Prevention Manager at the Reading store, was present at, or even a participant in, various meetings involving Advance Security guards (as plaintiff claims) does not produce an employment relationship between Polo and Rodriguez. Also, the parties do dispute who was responsible for scheduling work by the Advance Security guards: plaintiff in his deposition claimed that such scheduling was all done by Steven Brader, Polo's Loss Prevention Manager, *see* Dep. of Ismael Rodriguez at 58, while Brader, in his Declaration, avers that Advance Security was responsible for scheduling of guards in the store, *see* Decl. of Steven Brader ¶ 6. This dispute is not material, however, since even assuming plaintiff's claim to be true, the arms' length contractual relationship between Polo and Advance Security, and the other evidence showing Rodriguez to be an employee of Advance Security outweighs, under the *Darden* test, the impact of Brader's alleged scheduling role.

104 L.Ed.2d 268 (1989) as modified by the Civil Rights Act of 1991 [13]; and "pretext" cases, which are evaluated under a framework initially developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It is not required that a plaintiff "choose" one of these liability theories at the summary judgment stage, but rather the case must go forward if plaintiff's claim would survive under either theory, *see Armbruster v. Unisys Corp.*, 32 F.3d 768, 781 n. 17 (3d Cir.1994). The "mixed motive" and "pretext" types of cases differ in the way in which the alleged discrimination is manifested: "mixed motive" cases involve evidence of direct intent to discriminate in the employment decision [14], while "pretext" cases involve circumstantial evidence that the employment decision was made on improper grounds, and that defendant's proffered reasons for the decisions are pretexts.

Here, plaintiff's *pro se* claims might sound in either of these liability forms. We will address a "mixed motives" claim first.

■ A "mixed motives" case requires that the plaintiff show by direct evidence that the decisionmakers placed substantial negative reliance on illegitimate criteria in reaching their decision; that is, the allegedly discriminatory conduct or statements must be associated with the decision made, *see Starceski*, 54 F.3d at 1096. Here, Rodriguez claims that Polo, in the person of Steven Brader, Polo's Loss Prevention Manager, caused Rodriguez's termination from Advance Security employment because of his Latino ethnicity. In support of its motion for summary judgment, Polo offers the Declaration of Steven Brader, averring that he "played no role whatsoever in the decision to terminate plaintiff." Decl. of Steven Brader ¶ 8. In his opposition to the summary judgment motion, plaintiff disputes this claim, but he offers no proper evidence whatever [15] to show that Brader did in fact influence Advance Security's decision to terminate him. Therefore, there remains no disputed issue of material fact as to a potential "mixed motives" claim, and consequently a such a claim cannot survive summary judgment.

■ Rodriguez also claims that the discrimination against him is demonstrated by the fact that he was replaced by three white workers after his termination. This amounts to an "indirect" or "pretext" claim of discrimination. In a "pretext" case, the plaintiff is required to make an initial showing of a *prima facie* case of discrimination comprising three elements: 1) that plaintiff is a member of a protected class, 2) that plaintiff was qualified for the position, and 3) that plaintiff was discharged under circumstances that give rise to an inference of unlawful discrimination, *see Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir.1995). In moving for summary judgment, Polo claims that the three white males who plaintiff alleges were hired to replace him were actually working for Advance Security [16] at the time Rodriguez was hired, and that therefore the claim the he was replaced by such men is clearly wrong [17]. In support of this argument,

---

13. Specifically, 42 U.S.C. § 2000e–2(m).

14. Such claims require the plaintiff to shoulder a substantial burden, and in particular plaintiff must show that the allegedly discriminatory conduct or behavior was related to the employment decision, *see Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir.1995).

15. Plaintiff's main "evidence" opposing defendant's argument is James Thorpe's unsworn statement and perhaps also Yvette Santiago's investigation report. However, as noted in the margin above, neither of these is admissible for our consideration of the instant motions for summary judgment, and they will not be considered.

16. It is difficult to make out whether plaintiff claims that these three men were hired by Polo directly or by Advance Security. Since plaintiff was terminated by Advance Security, we will take the inference in plaintiff's favor that these men were hired by Advance Security and may in fact have replaced him.

17. Defendant appears to concede the first two elements of the *prima facie* case but is disputing the third.

Polo offers an Advance Security[18] work schedule labeled "Jan 1998" and including the days thirteen through nineteen; as noted above, Rodriguez was hired on January 12, 1998. Included on this schedule are the names of the three men who allegedly replaced plaintiff, but not the name of plaintiff, thus apparently supporting the claim that the individuals were working for Advance Security *before* plaintiff's hiring.

However, this schedule does not in fact serve to prove Polo's argument. In support of his opposition to summary judgment, Rodriguez submits several other work schedules, one of which is from "Jan 1998" and including the days sixteen through twenty-two. These include plaintiff's name. This produces a conundrum, since this schedule overlaps with the schedule Polo proffered (Rodriguez proffered the same schedule), raising a question as to which is the "real" schedule for that period. Fortunately, the schedules are also labeled with days of the week corresponding to the numbered days, and this labeling reveals[19] that the schedule Polo provided, with the names of the three white workers, is actually a work schedule for February 13–19, 1998, though it is mislabeled as being from "Jan 1998". Because Rodriguez was terminated on February 6, 1998, this schedule would provide evidence that he was replaced by the white workers. Thus, taking all inferences in favor of plaintiff, and in the absence of other arguments from defendant, Rodriguez may be said to have stated a *prima facie* case under the *McDonnell Douglas* framework.

Since he has arguably made a *prima facie* case, the burden of production shifts to the defendant, who is required to articulate a legitimate, nondiscriminatory rea-

son for the challenged employment action, *see Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once such a legitimate, nondiscriminatory reason is proffered, the plaintiff must point to evidence that discredits the claimed nondiscriminatory reason or that shows beyond a preponderance of the evidence that the employer's action had a discriminatory motivating cause, *see Sheridan v. E.I. Du-Pont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir.1996) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)).

Polo proffers as the legitimate reason for termination that Rodriguez had a poor work record, and includes as evidence several Advance Security "Daily Log" forms documenting Rodriguez's poor work performance.[20] Notably, Rodriguez fails to offer *any* evidence to show that his performance on the job was other than Polo's depiction of it. Nor has Rodriguez provided "specific facts" that would show that his poor performance was merely a pretext for his termination. He thus has failed to discredit the proffered reason for termination, and has failed to demonstrate, in the face of Polo's proffered reason, that a preponderance of the evidence shows that his termination had a discriminatory motivating cause.

Even if styled as a "pretextual" claim, then, Rodriguez's claim does not survive summary judgment, and we find, therefore, that summary judgment will be granted to defendant Polo as to plaintiff's 42 U.S.C. § 1981 claims, and, with them, as to his PHRA claims.[21]

*ORDER*

AND NOW, this 3rd day of December, 1999, upon consideration of plaintiff's mo-

---

**18.** Though they are not labeled as such, both parties appear to concede that these are Advance Security schedules.

**19.** Here, we take judicial notice of the calendar for 1998.

**20.** The forms, evidently completed and signed by Rex Francis, Rodriguez's Advance Security

supervisor, show, *inter alia*, that Rodriguez did not react well to Francis's counseling following violation of work rules, and that he resisted directions from Francis. *See* Decl. of John P. Quirke Ex. C.

**21.** See note 8, *supra*.

tion for summary judgment, defendant's response thereto, defendant's motion to dismiss the complaint or, in the alternative, for summary judgment, plaintiff's response thereto, and defendant's reply brief, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. Defendant's motion for summary judgment is GRANTED; and

2. JUDGMENT IS ENTERED in favor of defendant and against plaintiff as to all Counts.